# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Criminal Case No. 18-cr-00228-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ARLENE PEREDA,
    a/k/a "Marisol"

    Defendant.

---

**ORDER DENYING BOTH DEFENDANT'S MOTION TO SUPPRESS FRUITS OF SEARCH WARRANT AND MOTION TO SUPPRESS FRUITS OF UNLAWFUL DETENTION AND SEARCH AND VACATING SUPPRESSION HEARING**

---

This matter comes before the Court on Defendant Arlene Pereda's Motion to Suppress Fruits of Search Warrant (Doc. # 37) and Motion to Suppress Fruits of Unlawful Detention and Search (Doc. # 38). For the following reasons, the Court denies both motions.

## I.     BACKGROUND

In March 2018, Detective Christopher A. Shotts received information from a confidential informant (CI) that Ms. Pereda was distributing about 10 pounds of methamphetamine weekly out of her home — the carriage house at 1575 Gaylord Street. (Doc. # 37-1 at 2–3.) The CI also disclosed that he had previously purchased methamphetamine from Ms. Pereda and positively identified her from a DMV photograph. (*Id.* at 4.) The CI further informed law enforcement about a robbery at Ms. Pereda's home, where large quantities of methamphetamine and currency were stolen.

(*Id.* at 3.)

Based on this information, Detective Shotts began to investigate Ms. Pereda, in part by having surveillance cameras installed around her house. (*Id.* at 4.) Over the course of several weeks, Detective Shotts observed "numerous individuals at various hours respond to 1575 Gaylord Street 'Carriage' house." (*Id.* at 3.) Several of these individuals stayed for only short periods of time; "arriv[ing] with nothing and then le[aving] with backpacks and or bags." (*Id.*) Based on his training and experience, Detective Shotts believed these activities were consistent with narcotics distribution. (*Id.*)

On April 26, 2018, Detective Shotts observed Tina Lucero enter and exit Ms. Pereda's residence and drive away in a silver Nissan. (*Id.* at 5.) Two officers conducted a traffic stop on Ms. Lucero, and after she consented to a search of her belongings, officers found several small bags of methamphetamine and cocaine. (*Id.*) Ms. Lucero admitted she "just purchased the meth[amphetamine] from Arlene Pereda." (*Id.* at 6.)

Based on these facts, law enforcement obtained a warrant to search Ms. Pereda's residence. (Doc. # 37-1 at 1.) Ms. Pereda now objects to the issuance of this warrant and requests the suppression of any evidence uncovered in her home. (Doc. # 37.)

## II.     DISCUSSION

Ms. Pereda raises two primary arguments in her motion to suppress. First, she contends that the search warrant insufficiently describes the reliability of the CI and the source of his information. Second, Ms. Pereda argues that the warrant did not describe the place or things to be searched with enough particularity. The Court addresses and

rejects each argument in turn.

### A. RELIABILITY OF CONFIDENTIAL INFORMANT

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" and requires that "no warrant shall issue, but upon probable cause, supported by Oath." U.S. CONST. amend. IV. "Probable cause for a search warrant exists when the affidavit in support of the warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or other evidence of criminal activity is located at the place to be searched." *People v. Pate*, 878 P.2d 685, 689 (Colo. 1994).

As pertinent here, "a search warrant 'can be predicated upon . . . hearsay from a reliable . . . informant.'" *United States v. Harris*, 735 F.3d 1187, 1192 (10th Cir. 2013) (quoting *United States v. Monaco*, 700 F.2d 577, 580 (10th Cir. 1983)). Courts consider the totality of the circumstances to determine whether the search warrant sufficiently establishes the reliability of a confidential informant. *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "Under the totality-of-the-circumstances test, 'an informant's account of criminal activities need not establish the informant's basis of knowledge, so long as the informant's statement is sufficiently detailed to allow a judge to reasonably conclude that the informant had access to reliable information about the illegal activities reported to the police.'" *Pate*, 878 P.2d at 689 (quoting *People v. Abeyta*, 795 P.2d 1324, 1327–28 (Colo. 1990)). Moreover, "police corroboration of some of the information provided by the informant may be sufficient to support a finding of probable cause, even where all of the corroborated details relate to noncriminal activity." *Id.* at 689–90.

Considering the totality of circumstances in this case, the Court finds that the

3

warrant and accompanying affidavit contain sufficient facts to establish the reliability of the CI and that the warrant is supported by probable cause. The affidavit reflects that Detective Shotts had worked with this CI in the past and they had successfully orchestrated two purchases of methamphetamines. (Doc. # 37-1 at 3.) The CI also provided "pertinent and specific information on individuals involved in the distribution and manufacturing of methamphetamine in the Denver Metro area," on numerous other occasions. (*Id.*) Even more telling, the CI had purchased methamphetamine from Ms. Pereda. (*Id.*) According to Detective Shotts, the CI "ha[d] never provided information to [him] or any other Detective of the Denver Police Department that ha[d] proven to be false." (*Id.*) Moreover, law enforcement verified the CI's information in other ways: as mentioned, Detective Shotts placed surveillance cameras outside Ms. Pereda's home, observing what he believed to be several drug exchanges, and officers obtained a concession by Ms. Lucero that Ms. Pereda had sold methamphetamine to her.[1]

Having thoroughly considered the issue and the applicable law, the Court finds the warrant and affidavit sufficiently detailed the reliability of the CI to support a finding of probable cause. Suppression on these grounds is therefore unwarranted.

### B. PARTICULARITY OF THE SEARCH WARRANT

"The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). "The Amendment specifies only two matters that the warrant must 'particularly describ[e]': 'the place to be searched' and 'the persons or things to be seized.'" *United States v.*

---

[1] To the extent Ms. Pereda is objecting to the search of Ms. Lucero's belongings and her subsequent statements to law enforcement, Ms. Pereda has no standing to so object and her objection is, therefore, misplaced. *United States v. Valdez Hocker*, 333 F.3d 1206, 1208 (10th Cir. 2003) ("Fourth Amendment rights are personal and cannot be claimed vicariously.").

*Grubbs*, 547 U.S. 90, 91 (2006) (quoting *Dalia v. United States*, 441 U.S. 238, 239 (1979)). "The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985). "[W]here officers intend to search a residence, the description of the property to be searched may not be so ambiguous as to leave doubt as to the scope of the search." *United States v. Dahlman*, 13 F.3d 1391, 1396 (10th Cir. 1993). The "requisite specificity of the description . . . depends heavily on the facts of each case." *Id.* at 1078-79 (quoting *United States v. Dorrough*, 927 F.2d 498, 500 (10th Cir. 1991)).

Having thoroughly reviewed the applicable law and facts in this case, the Court finds that there was sufficient particularity in the search warrant to support searching Ms. Pereda's home.

The search warrant clearly stated the place to be searched as:

> 1575 N. Gaylord St. (Carriage Home), is a multi-unit residence located on the west side of the 1500 blk. Of N. Gaylord St. and is the first residence south of E. 16th Avenue. 1575 N. Gaylord St. is a tan brick residence with brown roof singles. The numbers 1575 are black in color and are located on the front of the porch which faces east. The carriage home which is stucco and is cream in color is detached from 1575 Gaylord St. and is located on the west side of 1575 N. Gaylord Street directly off of the Gaylord/Vine alley. The main entrance door of the carriage home faces north and is white in color. The carriage home does not have a separate address attached to the structure.

(Doc. # 37-1 at 1.) This description of the residence was not so ambiguous that another house might be mistakenly searched. Further, the warrant clearly stated the things to be seized were controlled substances, marijuana and marijuana concentrate, and items used in "connection with the manufacture, production, storage, sale, distribution or

5

dispensing of such substances. . . ." *Id.* This description clearly passes constitutional muster.

Ms. Pereda nonetheless argues the search warrant lacked particularity because it did not specify the layout of her home's interior or mention specific locations within the home where illegal substances could to be found. The Court finds this argument to be wholly without merit. Ms. Pereda has provided this Court with no case law to support her assertion. The only case tangentially referenced by Ms. Pereda, *Groh v. Ramirez*, 540 U.S. 551 (2004), is inapposite. In *Groh*, the Supreme Court invalidated a warrant that "did not describe the items to be seized at all." *Id.* at 558. Here, the items to be seized were described in detail. Counsel is expected to cite to the authorities upon which he relies in support of his contentions; it is not this Court's responsibility to conduct a review of legal authority to ferret out support for the arguments of counsel. Fed. R. Civ. P. 28(a) (8) (A); *United States v. Sloan*, 17 F. App'x 759, 762 (10th Cir. 2001). Moreover, even if Ms. Pereda's legal argument had merit, she has provided no facts to suggest that law enforcement's actions within her home in this case exceeded the scope of the warrant. Her argument is nothing more than conclusory, and the Court rejects it.

Accordingly, the Court thus finds that the search warrant in this case described "the place to be searched" and the "things to be seized'" with sufficient particularity and suppression of the evidence uncovered in Ms. Pereda's home is therefore unwarranted. *Grubbs*, 547 U.S. at 91.

## III. CONCLUSION

Based on the foregoing, the Court DENIES Defendant Arlene Pereda's Motion to Suppress Fruits of Search Warrant. (Doc. # 37.)

Moreover, based on the Government's Response (Doc. # 42) wherein it agrees to "self-suppress" the evidence challenged by Ms. Pereda in her Motion to Suppress Fruits of Unlawful Detention and Search (Doc. # 38), the Court DENIES that Motion as MOOT.

The Court accordingly VACATES the suppression hearing set for Tuesday, August 28, 2018.

DATED: August 22, 2018          BY THE COURT:

                                             *Christine M Arguello*

                                             CHRISTINE M. ARGUELLO
                                             United States District Judge